## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER ALVAREZ,      :
    Plaintiff      :
                      :       **No. 1:18-cv-1964**
    v.      :
                      :       **(Judge Rambo)**
WARDEN DAVID J.      :
EBBERT, *et al.*,      :
    Defendants      :

## MEMORANDUM

## I.    BACKGROUND

This case was initiated by the filing of a complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in Civil Action No. 18-716 by *pro se* Plaintiffs Camden Barlow, Christopher Alvarez ("Alvarez"), Justin Haynes, Darryl Taylor, Tabarus Holland, Terrell Wilson, Tony C. Knott, Agustin Argueta, Douglas Piggee, and Nathan A. Railey, all of whom were incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg") at that time. (Doc. No. 1.) In that complaint, Plaintiffs alleged that Defendants had violated their rights under the Equal Protection Clause of the Fourteenth Amendment, their First Amendment rights to access the courts, and their First Amendment rights regarding mail. Subsequently, Doreteo Garcia, Juan Carlos Valles, and David Jackson were added as Plaintiffs. *Barlow v. Ebbert*, Civ. A. No. 17-716 (M.D. Pa.) (Doc. No. 28). On July 24, 2018, the Court dismissed Plaintiffs'

Equal Protection claim and their access to the courts claim and directed service of their First Amendment enhanced mail restriction claim. *Id.* (Doc. Nos. 38, 39). On October 10, 2018, the Court granted Plaintiff Railey's motion to sever and directed that each individual Plaintiff file an amended complaint under a separate civil action number by November 9, 2018. *Id.* (Doc. Nos. 89, 90).

In his amended complaint, Alvarez alleges that Defendants violated his First Amendment rights by interfering with his incoming and outgoing mail and by retaliating against him by giving him disciplinary infractions, interfering with his correspondence, refusing legal copies, and conducting cell searches. He also contends that Defendants violated his due process rights under the Fifth Amendment by not following procedures before moving him "to a separate housing block for the purpose of interference and harassment of [his] correspondence." (Doc. No. 16.) By Order entered on December 18, 2018, the Court directed Defendants Warden David J. Ebbert ("Ebbert"), Special Investigative Services ("SIS") Officer Buebendorf ("Buebendorf"), and Officer/Counselor Tharp ("Tharp") to respond to the amended complaint within twenty-one (21) days, and directed service of the amended complaint upon additional Defendants Gass and John Doe. (Doc. No. 15.)[1]

---

[1] Service upon Defendant John Doe has not been made because of the lack of identifying information.

After receiving an extension of time, Defendants Ebbert, Buebendorf, Tharp, and Gass filed a motion to dismiss and/or motion for summary judgment on March 13, 2019 (Doc. No. 24) and filed their supporting materials on March 27, 2019 (Doc. Nos. 27, 28). Shortly thereafter, the Court received a notice of future change of address from Alvarez, indicating that he expected to be transferred from USP Lewisburg. (Doc. No. 30.)

In an Order entered on April 23, 2019, the Court directed the Clerk of Court to amend Alvarez's current address on the docket and, in an abundance of caution, directed Defendants to mail new copies of their filings to Alvarez at his new address. (Doc. No. 31.) The Court also noted that Defendants' motion to dismiss and/or motion for summary judgment asserts, *inter alia*, that Alvarez failed to properly exhaust his administrative remedies before filing this action. Pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court informed the parties that it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder. (*Id.*) Accordingly, the Court also directed Defendants to, within fourteen (14) days, file an amended or supplemental brief and statement of material facts "to further address the issue of whether Plaintiff has exhausted his administrative remedies and present any additional materials pertinent to the issue to the extent they have not already

done so." (*Id.*) The Court directed Alvarez to file a brief in opposition within twenty-one (21) days from the date that Defendants filed their amended or supplemental materials. (*Id.*) The Court directed Alvarez to "specifically address the issue of administrative exhaustion and submit materials and documents pertinent to the issue." (*Id.*) The Court also directed him to "file a statement of material facts specifically responding to the numbered paragraphs in Defendants' statements." (*Id.*)

Defendants did not file supplemental materials regarding the issue of exhaustion. In an Order entered on June 3, 2019, the Court noted that Alvarez had not filed a response to Defendants' motion and directed him to do so within twenty-one (21) days. (Doc. No. 33.) Despite the Court's Order, Alvarez has filed neither a brief in opposition nor a motion for an extension of time to do so. Accordingly, the motion to dismiss and/or motion for summary judgment is ripe for resolution.

## II.    STANDARD OF REVIEW

Defendants Ebbert, Buebendorf, Tharp, and Gass have filed a motion to dismiss and/or motion for summary judgment, arguing that: (1) they were not personally involved in the alleged violations of Alvarez's constitutional rights; (2) they are entitled to qualified immunity; (3) Alvarez's claims fail on the merits; (4) Alvarez failed to exhaust his administrative remedies; (5) Alvarez lacks standing;

and (6) sovereign immunity bars Alvarez's claims against them in their official capacities.

**A.      Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)**

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B.     Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The Third Circuit has held that filing a motion to dismiss, or in the alternative, a motion for summary judgment is sufficient "to place the parties on notice that summary

judgment might be entered." *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson*, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. *Anderson*, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001); *White v. Westinghouse Elec, Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the

pleadings,' in support of its right to relief." *U.S. Bank, Nat'l Ass'n v. Greenfield*, No. 1:12-cv-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

Furthermore, the Court is permitted to resolve cross-motions for summary judgment concurrently. *InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); 10A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2720 (3d ed. 1998). When doing so, the Court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. Fed. R. Civ. P. 56; *Raymond Proffitt Found. v. U.S. Envtl. Prot. Agency*, 930 F. Supp. 1088, 1096 (E.D. Pa. 1996).

# III. STATEMENT OF MATERIAL FACTS[2]

While Alvarez was incarcerated at USP Lewisburg, he was housed in the Special Management Unit ("SMU"). (Doc. No. 27 ¶ 6.)

## A. Facts Regarding Alvarez's Claims

As an SIS technician, Defendant Buebendorf's duties include "communicating gang affiliations, participating in gang activities, and handling and processing mail in accordance with any applicable monitoring requiring or restrictions." (*Id.* ¶ 44.) He performs these duties for an "assigned caseload of

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short, and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. No. 27.)

Alvarez did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1. However, he has filed a verified amended complaint, which may be treated as an affidavit in opposition to summary judgment. *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge."). However, this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed. *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

inmates." (*Id.* ¶ 45.) Alvarez was never assigned to Defendant Buebendorf's caseload, and Defendant Buebendorf was never responsible for handling or processing Alvarez's mail. (*Id.* ¶¶ 46-47.) Defendant Buebendorf also never "[oversaw] any investigations or alleged or suspected prohibited acts committed by Alvarez nor performed associated searches of Alvarez' records, cell or property." (*Id.* ¶ 48.)[3]

Defendant Gass is an Education Specialist at USP Lewisburg. (*Id.* ¶ 49.) If an inmate wants legal copies, he submits a written request to Defendant Gass. (*Id.* ¶ 51.) Defendant Gass maintains a log of every request for legal copies received. (*Id.* ¶ 52.) He never received any requests for legal copies from Alvarez. (*Id.* ¶ 53.)[4]

During his incarceration at USP Lewisburg, "10 out of 13 packages sent from Alvarez were delivered to the intended parties." (*Id.* ¶ 54.)[5] One (1) package was returned to Alvarez because the intended recipient did not claim it. (*Id.* ¶ 55.) No delivery status is available from the United States Postal Service ("USPS") for the other two (2) packages. (*Id.* ¶ 56.)

---

[3] Alvarez contends that inmates were subject to cell searches in retaliation for filing grievances and lawsuits. (Doc. No. 16 at 19.)

[4] Alvarez suggests that legal copies were denied "to stop us inmates from voicing our concerns to the courts or through the grievance process." (*Id.*)

[5] Alvarez maintains that during his incarceration at USP Lewisburg, he was "forced to certify [his] mail to ensure its shipment and delivery and still [his] mail [was] being harassed or simply disappear[ed]." (*Id.* at 4.)

## B.     Facts Regarding Exhaustion

The BOP "has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment." (*Id.* ¶ 7.)  First, an inmate must present his complaint to staff "on an Informal Resolution Attempt form commonly referred to as a BP-8." (*Id.* ¶ 8.)  If informal resolution is not successful, the inmate may then submit a Request for Administrative Remedy (BP-9) to the Warden. (*Id.* ¶ 9.)  "The deadline for completion of the BP-8 and submission of the BP-9 is twenty days from the date of the event which is the subject of the remedy." (*Id.* ¶ 10.)  The Warden has twenty (20) days to respond to the BP-9. (*Id.* ¶ 11.)  If an inmate is unsatisfied with the Warden's response, he may file a Regional Administrative Remedy Appeal (BP-10) with the Regional Director within twenty (20) days from the date of the Warden's response. (*Id.* ¶ 12.)  The Regional Director has thirty (30) days to respond. (*Id.* ¶ 13.)  Finally, an inmate may appeal the Regional Director's response by filing a Central Office Administrative Remedy Appeal (BP-11) with the Central Office within thirty (30) days of the Regional Director's response. (*Id.* ¶ 14.)  The Central Office has forty (40) days to respond. (*Id.* ¶ 15.)  The Central Office appeal is the final appeal, and no appeal is fully exhausted "until it is decided on its merits by the BOP's Central Office." (*Id.* ¶¶ 16-17.)  An administrative remedy may be rejected at any level if it was not properly or

timely submitted. (*Id.* ¶ 18.) If rejected, the remedy is "returned to the inmate and the inmate is provided with a written notice explaining the reason for rejection." (*Id.*) A rejection of a remedy is not a decision on the merits. (*Id.* ¶ 20.)

Each administrative remedy is given an identification number upon submission. (*Id.* ¶ 21.) The number is then followed by a letter to indicate "the level at which that particular remedy was filed." (*Id.* ¶ 22.) "F" refers to the institution level; "R" refers to the Regional Director; and "A" refers to the Central Office. (*Id.* ¶¶ 23-25.)

The BOP maintains a computerized index of all remedies and appeals filed by all inmates. (*Id.* ¶ 27.) An "Administrative Remedy Generalized Retrieval provide[s] details concerning each remedy filed by the inmates including the administrative remedy ID number, the date the remedy was received, an abstract (description) of the issue(s) raised, the three-letter code of the facility where the event occurred, the date the remedy was responded to, the status code, and the status reason." (*Id.* ¶ 28.) During his incarceration at USP Lewisburg, Alvarez filed eleven (11) administrative remedies; however, "none of those administrative remedies concern the claims raised in the instant matter." (*Id.* ¶ 31.)

Administrative remedy forms "are primarily distributed by Correctional Counselors who make routine rounds several times a week." (*Id.* ¶ 32.) When an

inmate makes a request for a BP-8, the informal resolution form, the assigned counselor "gives the inmate the form with the date on which it was provided and the inmate's name noted on it." (*Id.* ¶ 34.) When an inmate returned a completed BP-8, a number is assigned and it is "entered into a logbook with the date on which it was returned." (*Id.* ¶ 35.) The counselor then forwards the request to the proper department for response. (*Id.* ¶ 35.) Once the department responds, the response "is provided to the inmate and the date is noted in the logbook." (*Id.* ¶ 36.)

Defendant Tharp's logbook for the time period during which Alvarez was assigned to him indicates no record of Alvarez ever returning a completed BP-8 form. (*Id.* ¶ 37.) Counselors "also provided formal administrative remedy forms (BP-9s, BP-10s, and 11s) to inmates who request them." (*Id.* ¶ 38.) The inmate is responsible for sending those forms directly to the appropriate level. (*Id.* ¶ 39.) Defendant Tharp never refused to provide Alvarez with administrative remedy forms, and never attempted to interfere in any way with Alvarez's use of the administrative remedy process. (*Id.* ¶¶ 41-42.)[6]

---

[6] As discussed *infra*, Alvarez maintains that he experienced a "refusal to attain administrative remedies by Mr. Tharp." (*Id.* at 6.) He asserts that the administrative remedy process was rendered unavailable due to "impediments" by the administration. (*Id.* at 7-8, 11-13.)

# IV. DISCUSSION

## A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. *Id.* Additionally, courts have

imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"); *Perazzo v. Fisher*, No. 11-1505, 2012 WL 1964419, at *1 (M.D. Pa. May 31, 2012) (dismissing case for failure to exhaust administrative remedies where plaintiff indicated in the complaint that the grievance process was not complete but was at the "last stage"); *Jones v. Lorady*, No. 11-666, 2011 WL 2461982, at *3-4 (M.D. Pa. June 17, 2011) (dismissing prisoner complaint for failure to exhaust administrative remedies prior to initiating federal action). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this

exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir.

2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *Id.* at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a

failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269.

Failure to exhaust is an affirmative defense that must be pled by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" *Foster v. Morris*, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Id.* (quoting *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

In this matter, Defendants have submitted a declaration from E. Frymoyer, an Attorney Advisor at USP Lewisburg, as well as a copy of Alvarez's Administrative Remedy Generalized Retrieval, to support their argument that Alvarez has not exhausted his administrative remedies with respect to his claims. (*See* Doc. No. 27-

1 at 1-13.)  As noted above, while at USP Lewisburg, Alvarez submitted eleven (11) administrative remedies, but none of them concerned the claims raised in his amended complaint.  (Frymoyer Decl. ¶¶ 8-14; *see also id.*, Attach. A.)

In his verified amended complaint, Alvarez asserts that Defendant Tharp impeded the administrative remedy process by refusing to provide grievance forms.  (Doc. No. 16 at 6-8, 11-13.)  In support of their motion, Defendants have also submitted a declaration from Defendant Tharp in which he asserts that Alvarez never returned a completed BP-8 form to him during the time he was assigned to Defendant Tharp's caseload, which was from February 5, 2018 through January 28, 2019.  (Doc. No. 27-1 at 51-52, ¶¶ 2, 4.)  Moreover, Defendant Tharp never refused to provide Alvarez with administrative remedy forms and never attempted to interfere with his ability to utilize the administrative remedy procedure."  (*Id.* ¶ 6.)

When considering a motion for summary judgment, "a district court may not make credibility determinations or engage in any weighing of the evidence." *Paladino v. Newsome*, 885 F.3d 203, 209-10 (3d Cir. 2018) (quoting *Marino v Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)).  Instead, "the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* at 210 (quoting *Marino*, 358 F.3d at 247).  Thus, in light of Alvarez's assertions, there is a genuine factual dispute concerning whether Defendant Tharp refused to

provide administrative remedy forms, a dispute which is material to whether the administrative remedy process was available to Alvarez such that he could exhaust the claims he raises in his amended complaint. Accordingly, the Court declines to grant Defendants' motion on the basis that Alvarez failed to exhaust his administrative remedies. The Court therefore discusses the merits of Alvarez's claims below.

### B.     First Amendment Claims

#### a.     Interference with Mail

In his amended complaint, Alvarez acknowledges that he was never subjected to the enhanced mail restrictions as alleged by Plaintiffs in the initial complaint. (Doc. No. 16 at 4.) Rather, he asserts that his First Amendment rights have been violated based upon "major issues with receiving and sending correspondence." (*Id.*) He maintains that he did not receive mail from his family and that his outgoing mail "simply disappears." (*Id.*) Alvarez contends that Defendant Buebendorf interfered with his mail, and that Defendant Ebbert had knowledge of such interference. (*Id.* at 5.)

"Prisoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995)). However,

inmates' right to receive and send mail can be restricted for legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court has explained that this right is grounded in the opportunity to read the words written by the sender. *See Procunier v. Martinez*, 416 U.S. 396, 408 (1974), *overruled in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989) (noting that written communication between two individuals "is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result.").

Prior to Alvarez's claims being severed, he submitted ten (10) certified mail receipts from the USPS and also referenced three (3) certified mail receipt numbers without providing receipts for such. *See Railey v. Ebbert*, No. 1:18-cv-716 (Doc. No. 72 at 7-8, 12-14). Defendants have submitted evidence that out of the ten (10) receipts Alvarez produced, the tracking numbers show that nine (9) of the ten (10) reached their destination and one (1) was returned to Alvarez after the recipient failed to claim it. (Doc. No. 27 ¶¶ 54-55.) Of the three (3) for which he did not produce receipts, one (1) was delivered and tracking information was not available for the other two. (*Id.* ¶ 56.) Nothing in the record supports Alvarez's self-serving allegations that his outgoing mail "simply disappeared" at the hands of Defendants

Buebendorf and Ebbert. Moreover, to the extent Alvarez asserts that his incoming mail was "harassed" and did not reach him, he has provided no evidence regarding this expected mail, including, but not limited to, the identity of the senders, the approximate dates on which it was sent, and what he expected to receive. Quite simply, Alvarez has not demonstrated that Defendants Ebbert and Buebendorf violated his First Amendment rights by interfering with his incoming and outgoing mail.[7] Accordingly, the Court will grant the motion to dismiss and/or motion for summary judgment with respect to this claim.

### b. Retaliation

Alvarez also suggests that Defendants violated his First Amendment right to be free from retaliation. Specifically, he contends that Defendants Gass, Buebendorf, Tharp, "and others undefined had purposely used retaliatory measures" against him, including disciplinary infractions, interference with his mail, the refusal to make legal copies, cell searches, the refusal of grievance forms, "and much more." (Doc. No. 16 at 6.) Alvarez maintains that all of these measures "stemmed from [his] constitutional activity of sending mail, providing complaints, grievances, and filings within the courts." (*Id.*) He believes that these measures were designed "to

---

[7] In addition, Defendants have submitted evidence that Defendant Buebendorf was never responsible for handling or processing Alvarez's mail. (Doc. No. 27 ¶¶ 43-48.)

stop us inmates from voicing our concerns to the courts or through the grievance process." (*Id.* at 19.)

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an

inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.  "This is often referred to as the 'same decision defense.'" *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).  If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

The Court agrees with Defendants that Alvarez's amended complaint "do[es] nothing more than set forth threadbare recitals of the first two requirements to establish a retaliation claim: engaging in constitutionally protected conduct and adverse action." (*See* Doc. No. 28 at 20.)  Alvarez fails to set forth facts regarding when he engaged in constitutionally protected conduct and experienced adverse action, and fails to set forth facts suggesting that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Doyle*, 429 U.S. at 287).  Accordingly, the Court will grant Defendants' motion to dismiss Alvarez's retaliation claim.

## C.    Fifth Amendment Due Process Claim

Alvarez also suggests that his Fifth Amendment due process rights were violated by the "mail restrictions and mail interference by Mr. Buebendorf, refusal to attain administrative remedies by Mr. Tharp, refusal of legal copies by Mr. Gass, refusal to attain legal work in property by (unknown), and the knowledge and refusal to address these non-published, non-reviewable policies and procedures by Warden David J. Ebbert." (Doc. No. 16 at 6.) While unclear, he suggests that Defendants engaged in improper rulemaking, thus violating his Fifth Amendment rights. (*Id.*)

To the extent that Alvarez is raising a substantive due process claim, his allegations are clearly premised on First Amendment violations, as set forth above. Thus, any such substantive due process claims will be dismissed as foreclosed under "the more-specific-provision rule." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 261 (3d Cir. 2010). Likewise, any procedural due process claims will also be dismissed because they are premised on alleged First Amendment violations. *See, e.g.*, *Wilson v. City of Cherry Hill*, No. 10-3866, 2011 WL 3651274, at *8 n.12 (D.N.J. Aug. 18, 2011) (applying the more-specific-provision rule in the substantive due process context and then dismissing the procedural due process claim because courts general dismiss both when the gravamen of the plaintiff's lawsuit is clearly premised on a violation of a different constitutional provision).

Alvarez also appears to take issue with his placement in the SMU while incarcerated at USP Lewisburg. (*See* Doc. No. 16 at 5.) However, he has no due process liberty interest in avoiding placement in the SMU. *See, e.g.*, *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 470-71 (M.D. Pa. Mar. 5, 2010); *Mackey v. Strada*, No. 3:cv-06-156, 2008 WL 4210468, at *5-6 (M.D. Pa. Sept. 9, 2008); *McKettrick v. Williamson*, No. 4:cv-06-543, 2006 WL 1307929, at *3-9 (M.D. Pa. Mar. 22, 2006). Moreover, nothing in the record before the Court suggests that Alvarez's placement in the SMU subjected him to "atypical or significant hardship." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Robinson v. Norwood*, 535 F. App'x 81, 83-84 (3d Cir. 2013) (affirming that inmate plaintiff's placement in the SHU at USP Lewisburg did not violate his due process rights). Accordingly, the Court will grant Defendants' motion with respect to Alvarez's Fifth Amendment due process claim.

### D.     Leave to Amend and Rule 4(m) Notice for Defendant John Doe

The United States Court of Appeals for the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel.

*Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "A district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). While the Court concludes it would be futile to allow Alvarez to amend his First Amendment mail interference and Fifth Amendment due process claims, it is not apparent that amendment of his First Amendment retaliation claim would be futile or inequitable. Accordingly, the Court will grant Alvarez leave to file a second amended complaint with respect to his retaliation claim.

Leave to amend is also appropriate because Alvarez has not yet named or served Defendant John Doe. "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed;" however, "an action cannot be maintained solely against Doe defendants." *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998). Once a defendant's real name has been identified, the plaintiff may replace the John Doe with the party's real name by filing an amended complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. *See Ballard v. Williams*, No. 3:10-cv-1456, 2012 WL 3113934, at *1 (M.D. Pa. July 31, 2012) (citing *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003)).

Moreover, Rule 4(m) of the Federal Rules of Civil Procedure states that:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Here, Alvarez filed his amended complaint, in which he named Defendant John Doe for the first time, on December 18, 2018. His ninety (90)-day period has thus passed, and a review of the docket reveals that Defendant John Doe has not been served. Accordingly, in granting leave to amend, the Court also places Alvarez on notice that he must identify and effect service upon Defendant John Doe if he wishes to reassert claims against that defendant in a second amended complaint. If Alvarez fails to do so, Defendant John Doe will be subject to dismissal pursuant to Rule 4(m). *See McLaud v. Indus. Res., Inc.*, No. 3:CV-14-737, 2015 WL 737569, at *3 (M.D. Pa. Feb. 20, 2015) ("[T]he filing of an amended complaint does not restart the 120-day service period as to defendants that are not newly added to the complaint.").

## V.    CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss and/or motion for summary judgment filed by Defendants Ebbert, Buebendorf, Tharp, and Gass. (Doc. No. 24). Alvarez's First Amendment mail claim and Fifth Amendment

due process claim will be dismissed with prejudice. His First Amendment retaliation claim will be dismissed without prejudice to Alvarez filing an amended complaint within thirty (30) days of the date of the Order accompanying this Memorandum. Alvarez must also identify and effect service upon Defendant John Doe if he wishes to reassert claims against that defendant in a second amended complaint. If Alvarez fails to do so, Defendant John Doe will be subject to dismissal pursuant to Rule 4(m). An appropriate Order follows.

<u>s/Sylvia H. Rambo</u>
SYLVIA H. RAMBO
United States District Judge

Dated: July 2, 2019